1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MELISSA W.,

9

                    Plaintiff,

CASE NO. C18-5410-MAT

10

         v.

11

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

ORDER  RE: SOCIAL SECURITY
DISABILITY APPEAL

12

13

                    Defendant.

14

15    Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of

16  the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

17  application for Supplemental Security Income (SSI) after a hearing before an Administrative Law

18  Judge (ALJ).   Having considered the ALJ's decision, the administrative record (AR), and all

19  memoranda of record, this matter is AFFIRMED.

20                        **FACTS AND PROCEDURAL HISTORY**

21    Plaintiff was born on XXXX, 1968.[1]  She completed high school.  (AR 195.)  Other than

22  odd jobs, plaintiff has not worked since 1985.  (AR 196.)

23

---

[1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff filed an SSI application in October 2014, alleging disability beginning January 1, 2000. (AR 331.) Her application was denied initially and on reconsideration.

On June 23, 2016, ALJ Gene Duncan held a hearing, taking testimony from plaintiff, a medical expert (ME), and a vocational expert (VE). (AR 190-235.) On March 3, 2017, the ALJ issued a decision finding plaintiff not disabled. (AR 37-51.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 6, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the application date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's headaches controlled effectively with medication; right foot tendonitis; L4-5 degeneration; first degree anterior spondylolisthesis of L3 and L4; and cervical degenerative disc disease with moderate canal stenosis. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, except that she can stand and/or walk for four hours out of an eight-hour workday; should not climb ladders, work at heights, or work near hazards; should not crawl; can occasionally perform other postural movements; can perform simple repetitive work; can have superficial public contact; and should not make business decisions. Plaintiff had no past relevant work to consider at step four.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a street cleaner, flagger, and parking lot signaler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ failed to provide sufficient reasons to reject her subjective claims and that those errors implicated the RFC, the hypothetical proffered to the VE, and the step five

finding. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling (SSR) 16-3p.[2]

Plaintiff testified she was not working due to some physical limitations and migraines. (*See* AR 44.) She had two, sometimes three migraines a month, lasting two-to-three days, with an additional day to recover. The use of rizatriptan at onset sometimes lessened the headaches and had prevented headaches, but not often. (*See* AR 44-45.) Plaintiff had had migraines for as long as she could remember, and just put up with them and used aspirin until she recently started going to a doctor. (*See* AR 45.) Her migraines had worsened and became more frequent as she got older, and were triggered by stress and getting angry. She had never been to a hospital for a migraine and had not earlier thought of seeing a doctor even though she had medical insurance. She received

---

[2] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

a referral to a neurologist only three weeks prior to the hearing, saw neurologist Dr. John Miller one week prior, and had an MRI scheduled for the following day. She had not previously discussed a referral to a neurologist with her primary care provider.

Plaintiff also has scoliosis and slipped discs in her back, and lower back pain. She had been taking hydrocodone and cyclobenzaprine for her back and avoided lifting heavy things. The medications made her tired, but she did not take naps during the day. She could only walk five minutes before her back and right foot started hurting and could stand for five minutes or less. She sometimes has trouble sitting and has trouble sitting all the time, but did not demonstrate trouble sitting during the hearing and only stood when her representative asked if she needed to stand. She also had trouble sleeping and using her hands. (AR 215, 218-19.)

Plaintiff testified she has been separated from her husband for the last fourteen years, lives with a friend, and supported herself with odd jobs, such as housecleaning and babysitting. She has not done any odd jobs for about two years. (*See* AR 45.) The ME testified little had been done in the way of treatment for plaintiff's symptoms, recommended referral to a neurologist for migraine treatment, and opined plaintiff's migraines would be helped significantly with appropriate treatment.

The ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) He found the objective medical evidence and treatment record inconsistent with plaintiff's allegations of disabling physical limitations. In describing the record (*see* AR 45-48), the ALJ discussed evidence associated with plaintiff's treatment and use of medications, including evidence showing her pain symptoms were adequately controlled with medications and of a failure to comply with prescribed treatment or follow through with treatment recommendations. (*See, e.g.,*

AR 527 (September 2015: "Clearly the benefits of these medications have allowed the patient to have reasonable function."); AR 676 (September 2015: reporting use of rizatriptan as needed for migraines, hydrocodone and ibuprofen 800 for back pain, and cyclobenzaprine for muscle relaxation when in spasm; "Current efficacy: Highly effective"; "Description of efficacy: The meds work."); AR 540 (December 2015: "She has only been trying the maxalt once with a headache and not repeating second dose after 2 hours."); AR 545 (February 2016: "States has not been using as many, as the Maxalt seems to be helping her."); AR 550 (March 2016: "We have discussed several times in the past to start her on a daily medication to prevent her headaches, but she has always refused, and stayed with hydrocodone, flexeril, and maxalt, stating these seemed to help. She has never seen a neurologist, had an MRI, she has consistently come in every 6 to 8 weeks, never complaining that things are worse. I told her disability would refuse her based on lack of follow up or other options for treatment.")) The ALJ noted inconsistency between plaintiff's testimony a referral to a neurologist had not been previously discussed and evidence from a treating provider[3] suggesting plaintiff had been unwilling to see a neurologist. (*See* AR 48, 550 (described above) and AR 555 (May 16, 2016: "She is now willing to see Neurology to talk about options for her progressive migraines, that occur 2 to 3 times per month, lasting 2-3 days, and leaving her, in her words, 'stupid.'"))

The ALJ also found plaintiff's activities inconsistent with disabling limitations and demonstrating her ability to work consistent with the assessed RFC. (AR 48.) He pointed to plaintiff's testimony she did most of the housework, reads, drives once or twice a week, and went on a trip to California with a friend to visit another friend within the past year, and her report she

---

[3] This evidence came from a treating physician assistant, not a physician, as stated by the ALJ. (*See* AR 48 (describing evidence from "PA-C Franks" and "Dr. Frank's [sic]").)

prepares meals, shops, and plays cards with friends. The ALJ observed that none of plaintiff's treating providers had opined she had disabling limitations. (*Id.*) He accorded some weight to the opinions of one State agency non-examining physician, some and little weight to portions of another such physician's opinions, and stated, in relation to the ME, that "in the absence of any details from a diagnostic or therapeutic program, there is insufficient evidence from him to form an opinion regarding the claimant's [RFC]." (AR 48-49.)

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. § 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

An ALJ properly considers inconsistencies in a claimant's reporting, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), and evidence associated with treatment, §§ 404.1529(c)(3), 416.929(c)(3), SSR 16-3p, including a lack of treatment, *Burch v. Barnhart¸* 400 F.3d 676, 681 (9th Cir. 2005), and unexplained or inadequately explained failure to seek, comply, or follow through with treatment, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). An ALJ may consider whether a claimant's activities contradict testimony as to the degree of impairment. *Orn*

*v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Finally, an ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), so long as the observations are not a substitute for a medical diagnosis, *Marcia v. Sullivan*, 900 F.2d 172, 177, n.6 (9th Cir. 1990).

Plaintiff argues the ALJ erred in considering the objective medical evidence and the evidence of her activities. Because plaintiff did not address the other reasons offered by the ALJ in support of his conclusion, the Court finds any challenge to those reasons waived. *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). The Court further, and for the reasons set forth below, finds no error established.

A. <u>Objective Medical Evidence</u>

Plaintiff contends the ALJ did not review, discuss, or appreciate objective evidence in the record, including June 15, 2016 x-rays of her cervical spine showing severe multilevel degenerative changes, along with pain and radiculopathy (AR 726), and evidence from Dr. Miller addressing her cervical pain, migraines, and carpal tunnel syndrome (CTS) (AR 755, 758, and 761 (described below)). She notes the ALJ's failure to discuss her detailed headache logs and asserts the failure of both the ALJ and ME to recognize the significance of her extreme and ongoing pain medications. Plaintiff argues that Dr. Miller, in not suggesting any reason to reject plaintiff's incapacitating chronic headaches, significant cervical pain, and numb leg spasms, endorsed and gave credence to those claims. (*See* AR 761 (June 24, 2016: "Patient with chronic headache syndrome. At this time she has severe degenerative changes of her cervical spine. She has lower extremity hyperreflexia raising the question of cord compression. I think we need to look into this further. She probably has multifactorial issues. There are also sinus issues with left maxillary sinusitis."); AR 758 (July 7, 2016: "Patient returns today. She continues to have a variety of issues.

This includes headaches which are incapacitating. Maxalt is helpful. She is at least conceivably interested in a prophylactic. She also has significant cervical pain and at times her legs feel numb and weak. They almost seem to give her more problems at night. They get spasms at night as well. There have been no other acute changes. She doesn't remember any particular history of trauma."); AR 755 (July 26, 2016: "In terms of her headaches, it may be worthwhile trying a migraine preventative."; "In terms of CTS, it may be worthwhile at some point seeing an orthopedist to consider intervention."; "Also discussed her MRI of the cervical findings. I do think she probably needs [follow up] with either a neurosurgeon or spinal surgeon. She could get a referral through her [primary care provider (PCP)]. I am not sure this is an immediate need of intervention but I do think a plan needs to be put in place going forward. She would need to get a referral through her PCP."))

Because they were submitted to the Appeals Council after the ALJ's March 3, 2017 decision (*see* AR 8-11, 21-25), neither the ALJ, nor the ME could have considered the headache logs. The Appeals Council found the logs, dated between March 18 and July 16, 2017 and between July 18 and September 18, 2017 (*see id.*), did not relate to the period at issue and did not affect the decision regarding disability on or before March 3, 2017. (AR 2 (noting plaintiff may file a new application for consideration of a claim of disability after March 3, 2017).)

The ALJ's decision does reflect his consideration of the evidence from Dr. Miller, as well as the remainder of the medical evidence relating to plaintiff's cervical pain, headaches/ migraines, and CTS. At step two, the ALJ discussed the cervical spine MRI taken after the hearing and the earlier x-ray, and showing degenerative disc disease with moderate canal stenosis at C3-4. (AR 39.) He cited to Dr. Miller's July 26, 2016 treatment note in finding plaintiff's cervical condition a severe impairment. (*Id.* (citing AR 755).) The ALJ found the evidence to support a finding of a

severe impairment of headaches controlled effectively with medication, and discussed plaintiff's hand-related complaints and the evidence showing mild right and moderate left CTS. He found the record inconsistent with the allegation of hand problems, citing medical records and plaintiff's March 2016 report she was considering learning how to knit and crochet, and stated the July 2016 CTS diagnosis did not show an impairment persisting for twelve continuous months. (AR 40 (citations omitted).) Plaintiff points to evidence associated with CTS, but does not assert or support error in the ALJ's step two finding in relation to that condition.

At step four, the ALJ described cervical spine x-rays taken in 2013 (AR 45-46), treatment records addressing headaches and migraines (AR 46-48), and evidence from Dr. Miller (AR 48). The ALJ stated that, on June 15, 2016, Dr. Miller noted there had been no workup and no prophylactic therapy for headaches and ordered an MRI of the brain. He described June 24, 2016 MRI findings showing minimal subcortical white matter hyperintensity likely sequelae of vascular headache or small vessel ischemic disease, but no evidence of demyelinating disease. (AR 48 (citing AR 760).) He considered Dr. Miller's July 7, 2016 recommendation of prophylactic therapy and plaintiff's response "that at that time she just wanted to get further information and would let him know if he could be of benefit going forward." (*Id*. (citing AR 761).) The ALJ noted that, following the July 26, 2016 cervical spine MRI, Dr. Miller commented plaintiff's headaches may be triggered by her cervical region, and recommended a migraine preventative and a follow-up with a surgeon for the cervical findings. (*Id*. (citing AR 755).)

The ALJ need not discuss each piece of evidence in the record. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ, instead, "must explain why 'significant probative evidence has been rejected.'" *Id*. (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). *Accord Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995). The ALJ must consider all medical

opinion evidence. *Tommasetti*, 533 F.3d at 1041. However, where a physician does not assess any functional limitations, the ALJ need not provide reasons to reject a physician's statement. *See Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010). The ALJ, moreover, bears the "final responsibility" for determining a claimant's RFC. SSR 96-5P. *Accord* 20 C.F.R. § 416.927(d)(2), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015).

Dr. Miller did not offer an assessment of functional limitations or other medical opinion regarding plaintiff's cervical spine impairment, headaches/migraines, CTS, or any other condition. The ALJ properly considered the evidence from this physician in addressing plaintiff's impairments at step two and in assessing the RFC. Having considered and accepted the cervical spine MRI results and Dr. Miller's interpretation of those results, it cannot be said the ALJ erred in failing to also specifically address the cervical spine x-ray taken one month earlier. Nor does the evidence reflecting plaintiff's symptom reporting to Dr. Miller, Dr. Miller's observations prior to MRIs and other testing, and his later recommendations as to possible treatment (*see* AR 755, 758, 761) constitute opinion evidence necessitating evaluation by the ALJ. Plaintiff therefore fails to establish error in relation to Dr. Miller.

The ALJ also considered evidence associated with plaintiff's use of pain medication. Plaintiff argues the prescription of hydrocodone/Norco four times a day and cyclobenzine as a muscle relaxer indicates her treating providers found her neck, back, and headache pain credible and chronic. *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014). However, the mere existence of these prescriptions does not suffice to establish disability. The ALJ considered both plaintiff's use of these medications and evidence she had been counseled to decrease that use and pursue other avenues of treatment. (*See* AR 46-47 (citing AR 645-46 (September 25, 2014: Norco for

ankle pain discontinued and advised to use ibuprofen); AR 520 (July 15, 2015, Dr. Michael Buben: "I am very reluctant to give her more hydrocodone at her age as this usually can become a slippery slope. She has used ibuprofen in the past I encouraged her to use that as well today."); AR 540 (December 8, 2015, PA-C Franks: "She states she is needing refill of hydrocodone[.] . . . I did warn about cross addiction, will continue to monitor, as she has been requesting every 5 to 6 weeks, and used to be every three months or so."); AR 550 (in March 2016, Franks noted she repeatedly advised plaintiff to utilize daily medication for headache prevention, plaintiff's refusal and reliance on hydrocodone, flexeril, and Maxalt, and that plaintiff had not pursued other options for treatment or complained of worsening symptoms).) (*See also* AR 538, 543 (in October and December 2015, Franks "encouraged the patient to try to continue to decrease the amount of narcotic usage and to use other medications that are over the counter when possible.")) The ALJ construed the record to suggest adequate management of plaintiff's symptoms with medication, considered plaintiff's report the medications worked and were highly effective, and considered other evidence showing plaintiff's failure to pursue, comply, or follow through with other treatment recommendations. (*See* AR 46-48.)

The ALJ also considered the ME's testimony very little had been done in the way of treatment for plaintiff's symptoms and that appropriate treatment for her migraines would help considerably. (AR 45.) The ME stated: "In essence, the treatment that she's receiving seems to be primarily medication from a discomfort point of view, and that's dealing with symptoms as opposed to trying to deal with the problem that's producing the symptoms, which is the kind of thing that I think she needs." (AR 208.) He testified attempting to opine as to RFC would be very difficult "in the absence of any aggressive type of treatment program" and that it was very possible

plaintiff's migraines and other symptoms could be helped considerably with appropriate treatment. (AR 209-11.)

Plaintiff, in sum, does not demonstrate error in the ALJ's finding of inconsistency between the objective medical evidence and plaintiff's symptom testimony. The ALJ's interpretation of the evidence is rational and supported by substantial evidence. It therefore serves as one of several different specific, clear, and convincing reasons for discounting plaintiff's testimony as to the degree of her impairment.

B.    Activities

Plaintiff argues the modest activities identified by the ALJ as inconsistent with her testimony could all be performed in a self-scheduled way, with help from friends, opportunities for rest and medication breaks, and without any minimal performance standards. She denies the activities discredit her claims or that they reflect the rigors of work, with performance standards and limited time for breaks. She denies incompatibility between her activities and her severe cervical degeneration, as shown by objective evidence and validated by her medication regimen.

The Court finds no error. As reflected above, plaintiff testified she could stand or walk for only five minutes at a time, could not grip items for long, and had trouble sitting for extended periods. The ALJ rationally construed evidence showing plaintiff does most of the housework, drives, went on a trip to California, prepares meals, shops, and plays cards as inconsistent with her testimony. The ALJ did not entirely discredit plaintiff's claims. He found severe impairments and assessed an RFC accounting for limitations in functioning. While plaintiff construes the evidence of her activities differently, the ALJ's at least equally rational interpretation of the evidence withstands scrutiny. The ALJ properly considered inconsistency with activities as one of several different reasons for discounting plaintiff's testimony as to the degree of her impairment.

<u>Steps Four and Five</u>

Plaintiff's assertion of error in the RFC, hypothetical questions to the VE, and step five finding is entirely dependent on a finding of error in the evaluation of her symptom testimony. Having failed to establish any such error, this mere restating of plaintiff's argument does not establish error at step four or step five. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>3rd</u> day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge